EXHIBIT A

### IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
### STATE OF MISSOURI

| | | |
|---|---|---|
| DARCY SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | Case No. |
| | ) | |
| LIVE NATION ENTERTAINMENT, INC., | ) | |
| Serve Registered Agent: | ) | |
|     Corporate Creations Network, Inc. | ) | |
|     12747 Olive Blvd. #300 | ) | |
|     St. Louis, MO 63141 | ) | |
| | ) | |
| **Defendant.** | ) | |

**PETITION FOR DAMAGES**

**COMES NOW** Plaintiff, Darcy Smith, by and through her undersigned attorneys, and for her cause of action against Defendant Live Nation Entertainment, Inc., states and alleges as follows:

1. Plaintiff Darcy Smith is a resident of Jefferson City, Cole County, Missouri.

2. At all times relevant herein, Darcy Smith was lawfully married to Jasen Smith, and is a proper party to bring this cause of action for the wrongful death of her husband, pursuant to RSMo. § 537.080.

3. Defendant Live Nation Entertainment, Inc. (hereafter the "Live Nation"), is a Delaware corporation with its principle place of business located at 9348 Civic Center Drive, Beverly Hills, California 90210, and which owns and operates various entertainment venues throughout the United States, including the venue known as Hollywood Casino Amphitheatre located in St. Charles, Missouri.

4. Jurisdiction and venue are proper in St. Charles County, Missouri, pursuant to RSMo. § 508.010, as the negligence of Defendant and the injuries alleged herein occurred there.

5. On May 15, 2019, Darcy Smith and her husband, Jasen Smith, attended a Dave Matthews Band concert with friends at Hollywood Casino Amphitheatre in St. Charles, Missouri.

6. Shortly after the concert ended, Darcy and Jasen walked with their friends and exited the concert via the north exit of the concert venue.

7. Upon exiting the concert venue, Darcy realized she had left her souvenir t-shirt back at their seats and Jasen went back into the concert venue to retrieve it, while Darcy and their friends waited for him.

8. Unknown to Jasen, employees of Live Nation were breaking down hundreds of rental chairs that were positioned on the large grassy slope above the amphitheater (known as "the lawn"), and directly above a pedestrian concrete walkway area (known as "the moat").

9. Instead of carrying rental chairs down the lawn and carefully placing them in the moat, employees of Live Nation were throwing chairs down the lawn, toward and into the moat, often launching them several feet into the air or bouncing them off the ground or off one another.

10. On information and belief, in the process of retrieving his wife's t-shirt, as Jasen walked in the moat he was suddenly and without warning struck violently in the head by a rental chair carelessly thrown by one of Live Nation's employees.

11. The force of the impact from the thrown chair caused Jasen to fall backward, violently striking the back of his skull on the concrete and resulting in severe, catastrophic and ultimately fatal brain injury.

12. As Darcy waited for Jasen to return from the concert venue, she began to worry, and when Jasen failed to return after several minutes, Darcy texted him, asking "You OK?" Jasen did not respond to the text.

13. At approximately 11:15 p.m., Darcy then called Jasen on his cell phone. Instead of Jasen answering, an employee of Defendant answered and directed Darcy to his location where Jasen also was, lying injured on the ground, unconscious and unresponsive.

14. Jasen had blood coming from his mouth and ears, had urinated on himself, had vomited, and was making a gurgling sound with difficulty breathing due to his severe injuries.

15. Rather than rendering immediate care, Defendant's employees assumed Jasen was intoxicated, were slow to respond and delayed in providing care to him and in contacting emergency medical and law enforcement personnel.

16. Jasen was not intoxicated.

17. When they finally did provide aid, Defendant's employees grabbed Jasen off the ground and loaded him onto a golf cart, which they used to transport Jasen to Defendant's "EMT office."

18. Paramedics arrived and treated Jasen and loaded him into an ambulance, where Darcy road with him to DePaul Hospital for emergency medical care.

19. Despite emergency medical care and inpatient treatment at DePaul Hospital, Jason Smith died from his injuries the morning of May 16, 2019.

### Count I – Claim for Wrongful Death Against Defendant

20. Plaintiff Darcy Smith restates the allegations contained in paragraphs 1-19 above and incorporates them by reference as though fully set forth herein.

21. At all relevant times, Defendant owed decedent Jasen Smith a duty to maintain, operate, supervise and control its premises in a reasonable manner and to provide its patrons, such as Darcy Smith and her husband Jasen, a safe environment.

22. Defendant, through its own conduct, and by and through its agents and/or employees acting within the course and scope of their agency/employment, failed to comply with the aforementioned duties and was thereby negligent in one or more of the following respects:

    a. Failed to provide adequate security;

    b. Failed to properly supervise employees to ensure that they did not throw chairs in a dangerous manner;

    c. Failed to properly train its employees and/or staff not to throw chairs that might injure patrons;

    d. Failed to barricade and/or block access to the moat during the time that employees of Defendant were throwing chairs;

    e. Failed to warn patrons not to access the area of the moat when employees were throwing chairs;

    f. Failed to develop and implement an adequate security/safety plan to protect patrons;

    g. Failed to provide adequate training to employees which would allow them to prevent, identify, and/or respond to potentially dangerous events;

    h. Failed to adequately supervise employees to ensure that they were adequately performing job responsibilities in a way that would keep patrons safe;

Electronically Filed - St Charles Circuit Div - August 21, 2020 - 02:00 PM

      i.      Through employees throwing chairs into the moat;

      j.      Through employees failing to warn patrons not to walk in the moat while employees were throwing chairs;

      k.      Through employees failing to barricade and/or block access to the moat when they were throwing chairs; and

      i.      In such other ways as discovery may reveal and to be demonstrated at trial.

23. As a direct and proximate result of the negligence of Defendant, Jasen Smith suffered severe, fatal injuries, including but not limited to a fractured skull, contrecoup contusions to his brain – right and left orbital, gyrus rectus and temporal poles; along with subdural hemorrhage, subarachnoid hemorrhage and massive brain swelling with a right to left midline shift and marked herniation involving both the left and right tentorial regions, central herniation with total effacement of the basilar cistern, and eventual brain death.

24. At the time of his death, Jasen was a healthy 44-year-old family man who loved and cared for and helped to provide financial and emotional support for his wife Darcy and their 10-year-old twin boys.

25. As a direct and proximate result of Defendant's negligence, Plaintiff and her sons have suffered damages and have been deprived of Jasen's services, consortium, companionship, comfort, instruction, guidance, counsel, training, support, past and future income, household services and other valuable benefits.

26. As a direct and proximate result of Defendant's negligence, Plaintiff and her husband Jasen incurred substantial medical bills for medical care and treatment provided to Jasen in an effort to save his life.

27.    As a direct and proximate result of Defendant's negligence, Plaintiff incurred funeral and burial expenses in the amount of $9,456.90.

28.    As a further direct and proximate result of the negligence of Defendant, Jasen Smith was forced to endure emotional and physical pain and suffering between the time he was injured by Defendant's negligence and the time of his death, and such damages are recoverable in this action.

**WHEREFORE**, Plaintiff Darcy Smith prays for judgment against Defendant Live Nation in such an amount as is fair and reasonable in excess of $25,000.00, for pre-judgment and post-judgment interest thereon, for her costs incurred herein, and for such other and further relief as the Court deems just and proper.

**CALL & GENTRY LAW GROUP, LLC**

By:    */s/ Charles A. "Chip" Gentry*
      Charles A. "Chip" Gentry    #46388
      Jason L. Call    #42560
      Emily J. Fretwell    #60029
      Nicholas D. Leslie    #69194
      3218 Emerald Lane, Ste. C
      Jefferson City, MO  65109
      (573) 644-6090
      (573) 644-6922 (fax)
      chip@callgentry.com
      jason@callgentry.com
      emily@callgentry.com
      nick@callgentry.com

**ATTORNEYS FOR PLAINTIFF DARCY SMITH**